GENERAL INSURANCE COMPANY OF AMERICA v.
WILLIAM F. FAULKNER AND WIFE, MRS. WILLIAM F. FAULKNER.

(Filed 1 May 1963.)

1. **Parent and Child § 7—**

   At common law the mere relationship of parent and child did not impose liability on the parent for the torts of the child, but liability on the part of the parent usually obtained only when there was an agency relationship or when the parent in some way joined in the commission of the tort.

2. **Same;   Constitutional Law §§ 11, 20, 24—**

   G.S. 1-538.1 imposing liability on the parent in an amount not exceeding $500 for malicious or wilful destruction of property by the child affords the parent notice and opportunity to be heard and is a constitutional exercise of the police power for the purpose of curbing juvenile delinquency. Article I, § 17, of the Constitution of North Carolina.

3. **Constitutional Law § 23—**

   The Fifth Amendment to the Constitution of the United States does not limit the powers of the States but operates solely on the Federal Government.

4. **Pleadings § 12—**

   A demurrer admits the truth of the facts properly alleged in the complaint and the relevant inferences deducible therefrom, but such admission is solely for the purpose of the demurrer and does not obtain if the

demurrer is overruled, nor does the demurrer admit inferences or conclusions of law.

**5. Insurance § 86;   Parent and Child § 17—**

An insurance company paying the loss sustained in a fire maliciously set out by a minor in a school is subrogated to the rights of the county board of education against the parent of the minor under G.S. 1-538.1, since the right of subrogation is not limited to claims arising in tort but extends to rights afforded by statute.

**6. Subrogation;   Parties § 2—**

An insurer paying for damage to property owned by the insured is subrogated to the rights of the insured both under G.S. 58-176 and under equitable principles, and upon payment the insurer becomes the real party in interest and therefore must maintain in its own name an action against the party liable for the loss.

BOBBITT, J., dissents.

APPEAL by plaintiff from *Clark, J.,* 8 October 1962 Civil Term of WAKE, Small Claims Division.

Civil action, by virtue of G.S. 1-538.1 to recover $500.00 in damages from the parents of an eleven-year-old son living with them for his malicious or wilful destruction of property, heard upon a demurrer to an amended complaint.

We summarize the allegations of the amended complaint.

Plaintiff issued to the Kinston City Board of Education its policy number 43-125F-4064 providing insurance coverage for the Teachers Memorial School in Kinston. Among the risks covered by the policy was loss by fire to the building and its contents to the maximum limit of $479,000.00. The policy was in full force and effect on 1 December 1961.

On 1 December 1961 Freddie Faulkner, an eleven-year-old boy living with his parents, went into the auditorium of the Teachers Memorial School and maliciously and wilfully set fire to certain drapes or curtains constituting a part of the furnishings of the auditorium, and before the fire was discovered and extinguished it had damaged the property of the school in the amount of $2,916.50. This damage was proximately caused by the malicious and wilful conduct of Freddie Faulkner.

The Kinston City Board of Education made demand upon plaintiff under the provisions of its policy for payment for its loss by fire in the amount of $2,916.50, which amount plaintiff paid under the provisions of its policy, and plaintiff thereby became subrogated to the

rights and claims of the Kinston City Board of Education against any tort-feasor or tort-feasors responsible for the fire and loss.

Plaintiff is entitled to recover from defendants a sum not to exceed $500.00 by virtue of the provisions of G.S. 1-538.1, and prays for a recovery from the defendants, jointly and severally, in the amount of $500.00.

Defendants demurred to the amended complaint upon the following grounds:

One. It fails to allege that any act or omission to act on the part of the defendants was the proximate cause of any injury to plaintiff.

Two. Plaintiff is not one of the persons, firms, corporations, or organizations named in G.S. 1-538.1 as being authorized to institute an action and recover under the statute.

Three. It fails to allege facts sufficient to show that plaintiff is the real party in interest, and entitled to maintain the action.

Four. The statute is penal in nature, is not based on any default or wrongful act on the part of the defendants, is in derogation of the common law, and plaintiff is not entitled to maintain this action as subrogee or otherwise.

Five. G.S. 1-538.1 is unconstitutional as being in violation of Article I, section 17, of the North Carolina Constitution, and in violation of the Fifth Amendment to the Constitution of the United States.

Six. It fails to allege sufficient facts to constitute a cause of action for the breach of any legal duty on the part of the defendants, or either of them, or any legal liability on their part.

From a judgment sustaining the demurrer, and dismissing the action, plaintiff appeals.

*Dupree, Weaver, Horton & Cockman by Jerry S. Alvis for plaintiff appellant.*
*White & Aycock by Charles B. Aycock for defendant appellees.*

PARKER, J. G.S. 1-538.1, which was enacted by the General Assembly at its regular session in 1961, inclusive of the Title, reads:

"DAMAGES FOR MALICIOUS OR WILFUL DESTRUCTION OF PROPERTY BY MINORS.—Any person, firm, corporation, the State of North Carolina or any political subdivision thereof, or any religious, educational or charitable organization, or any nonprofit cemetery corporation, or organization, whether incorporated or unincorporated, shall be entitled to recover dam-

ages in an amount not to exceed five hundred dollars ($500.00), in an action in a court of competent jurisdiction, from the parents of any minor under the age of eighteen (18) years, living with its parents, who shall maliciously or wilfully destroy property, real, personal or mixed, belonging to any such person, firm, corporation, the State of North Carolina or any political subdivision thereof, or any religious, educational or charitable organization."

At common law, with which our decisions are in accord, the mere relationship of parent and child was not considered a proper basis for imposing vicarious liability upon the parent for the torts of the child. *Lane v. Chatham,* 251 N.C. 400, 111 S.E. 2d 598. Parental liability for a child's tort at common law was imposed generally in two situations, *i.e.,* where there was an agency relationship, or where the parent was himself guilty in the commission of the tort in some way. *Lane v. Chatham, supra; Hawes v. Haynes,* 219 N.C. 535, 14 S.E. 2d 503; Strong's N. C. Index, Vol. 3, Parent and Child, sec. 7; 67 C.J.S., Parent and Child, secs. 67 and 68.

Dissatisfaction with the common law rule, which often leaves the injured party with a worthless action against an insolvent minor, has been frequently manifested by circumvention by the courts of the rule through dubiously founded agency relationships, and at times through strained application of the "foreseeability" rule in order to find that some negligent act on the parent's part is the proximate cause of the injury. It seems that as a result of this apparent judicially expressed dissatisfaction, which in reality is an expression of the thoughts of modern society, and as a result of the increased incidents of juvenile vandalism, a large number of states, particularly in very recent years, have enacted parental liability statutes.

In *Grindstaff v. Watts,* 254 N.C. 568, 119 S.E. 2d 784, the Court, speaking by *Moore, J.,* states:

"While the family purpose doctrine sometimes deals with relationships other than that of parent and child it constitutes an exception to the common law rule with respect to the liability of a parent for the torts of his minor child, in automobile cases. * * *

"* * *In this State it is not the result of legislative action, but is a rule of law adopted by the Court. 'The doctrine undoubtedly involves a novel application of the rule of *respondeat superior* and may, perhaps, be regarded as straining that rule unduly.' 5 Am. Jur., Automobiles, s. 365, p. 705."

With the enactment of G.S. 1-538.1, North Carolina joins thirty-one other states which have imposed, by more or less similar statutes,

vicarious liability upon parents by virtue of their parental relationship for the malicious, or wilful, or intentional acts of their children. N. C. Law Review, Vol. 40, p. 625, where in an appendix to a Statutory Comment on "Parental Responsibility Statute" beginning on p. 619, there is set forth a list of the states with a statutory reference, the year of original passage, the maximum liability, and the age of the minor as set forth in the statutes of these thirty-one states. It appears that all of these statutes, except that of the State of Hawaii, are concerned in varying degree with property destruction caused by the child. These statutes significantly depart from the common law rule set forth above. "It is said that no person has a vested right in a continuance of the common or statute law." *Pinkham v. Mercer*, 227 N.C. 72, 40 S.E. 2d 690.

Defendants by their demurrer assert that G.S. 1-538.1 is unconstitutional as in conflict with Article I, section 17, of the North Carolina Constitution and as in conflict with the Fifth Amendment to the United States Constitution.

So far as a diligent search on our part and the briefs of counsel disclose, we know of only one case where the constitutionality of these statutes has been challenged, and that is *Kelly v. Williams* (Tex. Civ. App.), 346 S.W. 2d 434, rehearing denied 12 May 1961. In this case in a non-jury trial, appellee Williams obtained a judgment against appellant Kelly, father of the minor Warner S. Kelly, pursuant to the provisions of Article 5923-1, Vernon's Ann. Civ. St. An appeal was taken asserting primarily the unconstitutionality of the statute, in that it violated certain specified sections of the Constitution of the State of Texas, and violated the Fifth and Fourteenth Amendments to the United States Constitution. The pertinent part of the statute reads:

> "Section 1. Any property owner, including any municipal corporation, county, school district, or other political subdivision of the State of Texas, or any department or agency of the State of Texas, or any person, partnership, corporation or association, or any religious organization whether incorporated or unincorporated, shall be entitled to recover damages in an amount not to exceed Three Hundred Dollars ($300) from the parents of any minor under the age of eighteen (18) years and over the age of ten (10), who maliciously and wilfully damages or destroys property, real, personal or mixed, belonging to such owner. However, this Act shall not apply to parents whose parental custody and control of such child has been removed by court order, decree, or judgment."

The Court affirmed the judgment below, holding that the statute is not unreasonable and discriminatory and a denial of equal protection and due process of law, and is not in violation of certain specified sections of the Constitution of the State of Texas and of the Fifth and Fourteenth Amendments to the Constitution of the United States. The Court ended its opinion with this language:

"Twenty-four other states, inclusive of Alaska and Hawaii, have enacted comparable legislation, the constitutionality of which have never been under attack. Exhaustive law articles have also been written on the subject. All authors (see 37 Texas Law Review, p. 924) have endorsed these laws and have commented on the public justice accomplished by their passage. We quote the following from Villanova Law Review, Vol. 3, p. 529: 'The Civil Codes of Europe, Central and South America, Quebec, Louisiana, Hawaii and Puerto Rico have always provided for parental liability for the torts of children.' Now '* * *these legislatures * * * have decided that in all fairness, it is better that the parents of these young tort feasors be required to compensate those who are damaged, even though the parents be without fault, rather than to let the loss fall upon the innocent victims.' "

For other exhaustive law articles on this subject, see Chicago-Kent Law Review, Vol. 34, p. 222, June 1956; University of Kansas City Law Review, Vol. 28, p. 185, summer 1960; Michigan Law Review, Vol. 55, p. 1205, 1957; Notre Dame Lawyer, Vol. 30, p. 295, 1955; Washington Law Review, Vol. 36, p. 327, 1961; West Virginia Law Review, Vol. 60, p. 182, 1958; West Virginia Law Review, Vol. 64, p. 354, 1962.

In the University of Kansas City Law Review article in respect to legislation imposing vicarious liability upon parents for the tortious acts of their children, this is said on pp. 186-7:

"There appears to have been no cases in which the constitutionality of these statutes has been tested. As will be seen, these statutes resemble in their purpose the various 'family car' statutes that have been on the books for many years. Without going into any great detail, the constitutionality of these 'family car' statutes seems to rest on a balancing of the public interest and the individual interest. With the public interest held paramount the courts have found such statutes as being within the police power of the state. There seems to be no valid reason that the courts would hold otherwise on the 'vandalism' statutes. It seems fair and equitable to put the responsibility on the parent who may be

at least partly to blame for the child's conduct, rather than the innocent injured party."

G.S. 1-538.1, and similar statutes, appear to have been adopted not out of consideration for providing a restorative compensation for the victims of injurious or tortious conduct of children, but as an aid in the control of juvenile delinquency. Thus, the limitation in our statute of liability to malicious or wilful acts of children, as well as the limitation of liability to an amount not to exceed $500.00 for the destruction of property, fails to serve any of the general compensatory objectives of tort law. Its rationale apparently is that parental indifference and failure to supervise the activities of children is one of the major causes of juvenile delinquency; that parental liability for harm done by children will stimulate attention and supervision; and that the total effect will be a reduction in the anti-social behavior of children.

In *Eason v. Spence,* 232 N.C. 579, 61 S.E. 2d 717, the Court said: "Under Article I, section 17, of the State Constitution, no person can be deprived of his property except by his own consent or the law of the land. The law of the land and due process of law are interchangeable terms."

G.S. 1-538.1 gives to the parents of children a full opportunity to be heard or defend before a competent tribunal in an orderly proceeding, adapted to the nature of the case, which is uniform and regular and in accord with fundamental rules which do not violate fundamental rights. For the plaintiff to recover from the parents he must establish, *inter alia,* by the greater weight of the evidence, (1) that the minor was under the age of eighteen years living with his parents, and (2) that the child maliciously or wilfully destroyed property, real, personal, or mixed.

The Fifth Amendment to the United States Constitution, "unlike the Fourteenth, has no equal protection clause." *Currin v. Wallace,* 306 U.S. 1, 14, 83 L. Ed. 441, 450. "The first ten amendments to the Federal Constitution contain no restrictions on the powers of the state, but were intended to operate solely on the Federal Government. * * * Due process and equal protection of the laws are guaranteed by the Fourteenth Amendment, and this amendment operates to restrict the powers of the state * * *." *Brown v. New Jersey,* 175 U.S. 172, 44 L. Ed. 119.

It is our opinion, and we so hold, that the enactment by the General Assembly of G.S. 1-538.1 is within the police power of the State of North Carolina, and that it is not violative of the provisions of

Article I, section 17, of the State Constitution, or of the provisions of the Fifth Amendment to the Federal Constitution.

The demurrer admits, for the purpose, the truth of factual averments well stated in the amended complaint, and such relevant inferences as may be deduced therefrom, but it does not admit any legal inferences or conclusions of law asserted by the pleader. *McKinney v. City of High Point*, 237 N.C. 66, 74 S.E. 2d 440. The admissions inherent in a demurrer are not absolute, because the conditional admissions made by a demurrer forthwith end if the demurrer is overruled. *Erickson v. Starling*, 235 N.C. 643, 71 S.E. 2d 384.

The demurrer admits as true the factual averments in the amended complaint that the damage by fire to the school building and its contents amounted to $2,916.50, and that plaintiff paid the amount of damage in full as required by its contract of insurance. Consequently, if the right of subrogation exists for plaintiff to sue defendants under the provisions of G.S. 1-538.1, plaintiff is a necessary party plaintiff, must sue in its own name to enforce its right of subrogation, because it is entitled to the entire fruits of the action, and must be regarded as the real party in interest under G.S. 1-57. *Burgess v. Trevathan*, 236 N.C. 157, 72 S.E. 2d 231.

Subrogation originated in equity and is a creature of equity. Its object is the prevention of injustice and its basis is the doing of complete, essential, and perfect justice between all the parties without regard to form. *Peek v. Trust Co.*, 242 N.C. 1, 86 S.E. 2d 745; 83 C.J.S., Subrogation, sec. 2. "Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right. [Citing authority.] The party who is subrogated is regarded as entitled to the same rights and, indeed, as constituting one and the same person whom he succeeds. [Citing authority.]" *Dowdy v. R.R.* and *Burns v. R.R.*, 237 N.C. 519, 75 S.E. 2d 639; *Peek v. Trust Co.*, *supra*, p. 15.

It is well-settled law that an insurer paying a loss by fire under the obligations of its policy is entitled to subrogation to the rights of insured against persons whose fault or negligence caused the loss, to the extent of the loss paid, both by the provisions of G.S. 58-176 and under equitable principles. *Smith v. Pate*, 246 N.C. 63, 97 S.E. 2d 457; *Winkler v. Amusement Co.*, 238 N.C. 589, 79 S.E. 2d 185; 46 C.J.S., Insurance, sec. 1209, p. 152.

It is said in 46 C.J.S., Insurance, pp. 154-5: "The doctrine of subrogation is based on principles of natural justice and is created to afford relief to those required, as insurers, to pay a legal obligation which ought to have been met, either wholly or partially, by an-

other.* * *Insurer's right to subrogation is not limited to cases where the liability of the third person is founded in tort, but any right of insured to indemnity will pass to insurer on payment of the loss, including rights under contracts with third persons, and rights under a statute making a city liable for injury to property by a mob or riot therein." See to same effect, Appleman, Insurance Law and Practice, Vol. 6, p. 521.

This is said in 29A Am. Jur., Insurance, sec. 1720, p. 799:

> "The insurer's right of subrogation has been held to exist, although the liability of the third person was not founded in tort, as where an insurer who had paid to the insured the value of internal revenue stamps lost in a fire was held entitled to the latter's statutory right to reimbursement by the government; where the insurer was held to be subrogated to the insured's right to enforce contribution for the cost of a party wall; and where the insurer was held entitled to be subrogated to the rights of the insured against his lessor. An insurer may be subrogated to the right of the insured under a statute, as for example, the latter's right to recover against a railroad company under a statute rendering the latter liable to property owners for damages caused by fires set by the operation of the road, although the statute cannot be construed as giving the insurer a right of recovery independent of the insured. Likewise under some circumstances, the insurer may be subrogated to the rights of a mortgagee. However, the equitable doctrine of subrogation is applicable in aid of an insurer only where the insurer has some right which equity recognizes, to be furthered thereby."

If the Kinston City Board of Education had had no fire insurance on the school building and its contents, it would undoubtedly have been able to bring an action against defendants by virtue of the provisions of G.S. 1-538.1. The question presented is: May plaintiff, an insurance company, bring suit in its own name against defendants upon a claim to which it has become subrogated by payment in full of its loss to its insured under the provisions of its policy of insurance, who, pursuant to the provisions of G.S. 1-538.1 would have been able to bring such an action in its own name? This question is of first impression in this State. So far as an exhaustive search on our part discloses, this question has not been passed upon by any one of the thirty-one other states which have statutes similar to our G.S. 1-538.1. The answer to the question is, Yes.

We cannot accept the narrow and niggardly interpretation of G.S. 1-538.1 as contended for by defendants. That interpretation would lead to the illogical result that the defendants admittedly liable according to the admissions made by the demurrer for damage to the property of the Kinston City Board of Education in an amount not exceeding $500.00, if it had had no insurance, are relieved of all liability by reason of the collection of insurance by the Kinston City Board of Education; in other words, the defendants would receive the benefit of the insurance without having to pay a cent for it. To paraphrase language used in *Lyon & Sons v. Board of Education,* 238 N.C. 24, 76 S.E. 2d 553, in holding that the right of subrogation existed under the provisions of G.S. 143-291 *et seq.,* known as the Tort Claims against State Department and Agencies, it is not apparent why the prudent foresight of the Kinston City Board of Education in protecting its property by insurance should result in a detriment to the insurance company who paid the fire loss in full. The granting of subrogation will reach an equitable result: to deny it would accomplish injustice.

There is no merit to the contention of defendants that the amended complaint is fatally defective, because it fails to allege that any act or omission to act on the part of the defendants was the proximate cause of any injury to plaintiff, for the reason that G.S. 1-538.1 imposes vicarious liability upon parents by virtue of their relationship for the malicious or wilful destruction of property by a child under the age of eighteen living with them. The amended complaint states facts sufficient to constitute a cause of action against defendants under the provisions of G.S. 1-538.1.

The judgment sustaining the demurrer is
Reversed.

BOBBITT, J., dissents.