**MARYLAND CASUALTY COMPANY, Plaintiff,**

v.

**BANK OF CHARLOTTE, Defendant.**

**Civ. No. 1754.**

United States District Court
W. D. North Carolina,
Charlotte Division.

Heard Jan. 28, 1964.

Decided March 19, 1964.

Hunter M. Jones, Charlotte, N. C., for plaintiff.

S. Dean Hamrick and James D. Monteith, Charlotte, N. C., for defendant.

CRAVEN, Chief Judge.

Wisely, as it turned out, Southern Investment Company, Inc. purchased from Maryland Casualty Company a fidelity bond guarding against faithless employees. Over a period of some years the Secretary of Southern, by simple deceit difficult to detect, misappropriated some $18,000.00. Briefly stated,[1] the Secretary's method of operation was to make out checks payable to the Bank of Charlotte and drawn on another bank and duly signed by herself and the President of Southern Investment Company, Inc. By completing the attached voucher showing a legitimate business purpose she procured the President's signature. She then removed the vouchers from the checks before taking them to the Bank of Charlotte, and upon arrival there she received and misappropriated cash for the checks or sometimes deposited the receipts in her own account at the Bank of Charlotte. The books and records of Southern Investment Company were then either altered or postings were omitted so that the misappropriations were not discovered for some time.

Pursuant to its fidelity bond obligation, Maryland Casualty has fully reimbursed Southern for its loss and now seeks by way of subrogation to recoup from the Bank of Charlotte.

As stated in General Insurance Company of America v. Faulkner, 259 N.C. 317, 130 S.E.2d 645, with full citation of authority, subrogation is the substitution of one person in the place of another with reference to a lawful claim or right. The party who is subrogated is regarded as entitled to the same rights and, indeed, as constituting one and the same person whom he succeeds. Subrogation is based on principles of natural justice and is created to afford relief to those required, as insurers, to pay a legal obligation which ought to have been met, either wholly or partially, by another.

According to the weight of authority, the doctrine of subrogation does not apply in favor of a surety company on a fidelity bond against persons who did not participate in the wrongful act of the wrongdoer. See cases collected under the heading "Fidelity Bond", 83 C.J. S. Subrogation § 54, p. 688. The flaw in the rule, if there be one, is contained in the premise. Ordinarily, it would seem, the nonparticipant in the wrongful act would not be liable to either the subrogor or subrogee. If the rule is as broad as stated, it would seem to be unnecessary. Yet, many cases are to the contrary, including Bank of Fort Mill v. Lawyers Title Insurance Corporation, 268 F.2d 313 (4th Cir. 1959). In that case Judge Boreman said that the right of subrogation is an equitable rather than an absolute right applicable only where the equities of the party seeking subrogation are superior to those of the party against whom the right is asserted. He also stated that it is the general view that a paid surety has fewer equities than an innocent bank since the surety company is paid to assume the specific risks. He then demonstrated that the law of South Carolina was in accord with the great weight of authority and denied subrogation.

Whatever the great weight of authority may be elsewhere, in North Carolina there is room for thought that the paid surety company may be subrogated against persons who did not participate in the wrongful act of the wrongdoer. In General Insurance Company of America v. Faulkner, supra, the obligation sought to be enforced was a statutory one imposing liability on the innocent parents of juveniles committing vandalism. Allowing subrogation, the court said that to deny it would mean that the defendant parents would receive the benefit of vandalism insurance without having to pay a cent for it. By analogy, there seems no valid reason why the Bank of Charlotte should receive the benefit of Maryland Casualty's fidelity bond paid for by Southern Investment Company. Since Maryland has paid Southern's loss, it is equitable for it to stand in

---

1. Detailed Findings of Fact have been filed.

Southern's shoes and have as much, if any, claim against the Bank as Southern would have had. To hold otherwise is to pre-judge the activity of the Bank before reaching the merits of the subrogated claim: the Bank is allowed to assert its nonliability twice, i. e., procedurally and substantively. Once ought to suffice in most situations.

■ But being subrogated to the claim of Southern Investment Company against the Bank is for the plaintiff a pyrrhic victory. Substantively Southern would not be entitled to recover from the Bank, and the plaintiff's rights can rise no higher than their source. Not even the Uniform Fiduciary Act affords the plaintiff much relief. Indeed, G.S.N.C. §§ 32–6 and 32–10 relieve the Bank of any obligation to make inquiry except for those transactions amounting to approximately $5,000.00 wherein the Bank occupied the status of personal creditor of the defaulting fiduciary. Clearly, in those instances, the Act imposes liability upon the Bank. See the last sentence of G.S.N.C. § 32–6.

■ But the purpose of the Act is merely to make the law uniform. G.S. N.C. § 32–13; LaVecchia v. North Carolina Joint Stock Land Bank of Durham, 218 N.C. 35, 40, 9 S.E.2d 489. Nothing is contained in the Act indicating it to be a paramount statement of public policy forbidding a bank from contracting otherwise with its customer. Thus,

court's Exhibit A [2] is not invalidated by statute. It is a resolution relative to dealings with the Bank of Charlotte. Its submission to the Bank was fully authorized by all of the stockholders and, under G.S.N.C. § 55–29, is effective corporate action of Southern Investment Company, Inc.

There remains only the necessity of construing the language of court's Exhibit A, or so much of it as determines the controversy. Although not free of ambiguity, Section 2 of the resolution plainly is intended to relieve the Bank of any duty to make inquiry as to circumstance of issuance or disposition of proceeds, and this relief is afforded whether or not checks are presented to be cashed or even presented in payment of the fiduciary's individual obligation. Specifically, checks made payable to the Bank itself are put within the ambit of the relief afforded. Having authorized such a blanket resolution and furnished it to the Bank, Southern could not complain that the risk envisioned by the Bank and guarded against by the resolution has turned out to be a real one. Nor is plaintiff in a better position to attack the resolution.

On the basis of the findings of fact and conclusions of law previously filed and pursuant to this memorandum opinion, it is adjudged that plaintiff is entitled to recover of the defendant nothing and that the action be dismissed and costs be taxed against the plaintiff.

2. "2. RESOLVED FURTHER, that the authority to sign checks, drafts, and other instruments or orders drawn upon the Corporation's bank account or accounts, and to endorse checks, drafts and other instruments or orders payable to the Corporation, shall not be limited to the above named persons, but shall extend to such persons as are named as being so authorized in any letter or notice signed by any officer of this Corporation or any managing or local agent, and as to such checks and drafts the Bank shall not be required to make any inquiry as to the circumstances of the issuance or the disposition of the proceeds of such checks and drafts, but shall honor the same even if drawn payable to bearer or to the individual order of any signing person, or to the Bank or others, whether or not presented to be cashed or for the account of or in payment of such signing person's individual obligation or otherwise."