[No. E012847. Fourth Dist., Div. Two. Nov. 18, 1993.]

BETTY JEAN CURRY et al., Petitioners, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
RIALTO UNIFIED SCHOOL DISTRICT et al., Real Parties in Interest.

**COUNSEL**

Roberts & Morgan and Arthur K. Cunningham for Petitioners.

No appearance for Respondent.

Lewis, D'Amato, Brisbois & Bisgaard and Karen A. Feld for Real Parties in Interest.

## Opinion

**DABNEY Acting, P. J.**—In this matter we are called upon to decide whether a tortfeasor seeking partial equitable indemnity may claim the benefit of Civil Code section 1714.1[1] , which imposes financial responsibility upon the parents of an errant minor. We hold that the statute's provisions do run in favor of the third party tortfeasor, and are not limited to the injured party. We therefore conclude that the trial court correctly overruled petitioners' demurrer to real party's cause of action seeking equitable indemnity based on that statute.

The facts and procedural history of the case may be briefly summarized. A complaint was filed by Latashia Washington in which she alleged that she was sexually molested by cross-defendant David Curry, a minor. At the time of the alleged molestation, Ms. Washington—confined to a wheelchair due to cerebral palsy—was a student at Eisenhower High School, operated by petitioner Rialto Unified School District. The complaint sought damages primarily on the theory that the district, through its defendant employees Gayle Rellstab and Edna Herring, failed to control David Curry and failed to protect plaintiff from him.[2]

Plaintiff did not name David Curry or any members of his family in this action. The only defendants were, and apparently are, the district and its employees Rellstab and Herring.

Defendants (hereinafter sometimes simply District) then filed a cross-complaint against David Curry (therein referred to as Davey) and his parents, petitioners here Betty Curry and David Curry, setting forth general demands for indemnity and a more specific claim based on the parents' allegedly negligent supervision of their son. Summary judgment was granted on this cross-complaint, but District was given leave to amend to set forth a cause of action for indemnity based on section 1714.1.

The amended cross-complaint included some of the general claims for equitable indemnity as to which summary judgment had been granted, but also added a new fifth cause of action for indemnification based on section 1714.1. The Currys successfully demurred to all causes of action save the

---

[1]All subsequent statutory references are to the Civil Code unless otherwise specified.

[2]A second cause of action alleged that the school premises were in a dangerous condition because the "length, slope, and condition" of the path used by plaintiff were such that she could not negotiate it in her wheelchair without assistance, thus leading to the assault in some unspecified way.

1714.1 claim.[3] They seek mandate from this court to compel the trial court to sustain the demurrer to that cause of action as well, and thus eliminate them from the litigation.

## DISCUSSION

 Initially, we reiterate once again that we do not routinely afford plenary review to rulings on demurrers.[4] "Appellate courts simply do not have the time or resources to police law and motion rulings on the pleadings through the mandamus power and, absent unusual circumstances, decline to do so." (*James W.* v. *Superior Court* (1993) 17 Cal.App.4th 246, 252 [21 Cal.Rptr.2d 169]; see also *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379], noting the "extreme reluctance" with which such review is given.) However, where a significant issue of law is raised, and where resolution of the issue in favor of the petitioner would result in a final disposition as to that party, review by writ is appropriate. (*City of Ontario* v. *Superior Court* (1993) 12 Cal.App.4th 894, 897-898 [16 Cal.Rptr.2d 32].) This is such a case in both respects.

Section 1714.1 provides in pertinent part as follows: "(a) Any act of willful misconduct of a minor which results in injury . . . to another person . . . shall be imputed to the parent or guardian having custody and control of the minor for all purposes of civil damages, and the parent or guardian having custody and control shall be jointly and severally liable with the minor for any damages resulting from the willful misconduct." The parent's liability is limited to $10,000, and, with respect to personal injury claims, is limited to medical, dental, and hospital expenses.

 District relies on this statutory liability to support its claim for at least partial indemnity from the Curry parents. The Currys, petitioners here, argue that the statute inures to the benefit only of injured parties, and that the District has no claim against them.

The Currys argue that liability under section 1714.1 must be strictly construed. In support, they cite *Cynthia M.* v. *Rodney E.* (1991) 228 Cal.App.3d 1040, 1046 [279 Cal.Rptr. 94], which in turn relied upon *Weber* v. *Pinyan* (1937) 9 Cal.2d 226, 229 [70 P.2d 183, 112 A.L.R. 407].

Under the common law, there is no general parental liability for the torts of a child. (See generally, 6 Witkin, Summary of Cal. Law (9th ed. 1988)

---

[3]As this claim does not involve the son, David or Davey Curry, he is not a party to this petition.

[4]We consider repetition of this principle appropriate, because many practitioners—seeing only the published cases in which such review *is* granted—may otherwise assume that writ review may always appropriately be sought, even of insignificant or mootable pleading issues.

Torts, § 1001.) The court in *Cynthia M.* accordingly remarked that statutes imposing parental liability are therefore "in derogation of the common law," and the rule is that statutes which increase liability, or provide a remedy against a person who was not liable at common law are to be narrowly construed in favor of those sought to be subjected to them. (*Weber*, 9 Cal.2d at p. 229.) However, *Cynthia M.* and *Weber* (which involved a predecessor to the current owners' strict liability under Vehicle Code sections 17150 et seq.) both involve the question of when the liability should be imposed in general; neither considers in what directions the liability runs, once the conditions for imposing it are met. This was also the case in *Robertson* v. *Wentz* (1986) 187 Cal.App.3d 1281, 1292-1295 [232 Cal.Rptr. 634], in which a construction favoring the parent was in fact applied, with the result that the parent was found not to fit within the statutory language.

In this case, the question is not whether the statutory circumstances exist. No issue is raised as to whether the child's act was willful and intentional (cf. *Hanks* v. *Booth* (1986) 11 Kan.App.2d 149 [716 P.2d 596, 598]) or whether the parents had custody and the opportunity to control (cf. *Robertson* v. *Wentz, supra*). For the purposes of the demurrer, the allegations that these circumstances exist must be accepted as true. (*Aragon-Haas* v. *Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232, 238 [282 Cal.Rptr. 233].) The only question is whether the parents' statutory benefit should inure to the benefit of District, as well as of the victim.[5] We do not believe that the statute need be so strictly construed in favor of the parents in this situation. We also note that the approach of *Weber* v. *Pinyan* is not absolute; in *Peterson* v. *Grieger, Inc.* (1961) 57 Cal.2d 43, 50-51 [17 Cal.Rptr. 828, 367 P.2d 420], the court gave a *liberal* construction to the owner's liability statute, in order to carry out the "palpable" legislative purposes of providing protection to injured persons.

The Currys' position is, however, strongly supported by the closest authority which has been cited by the parties or uncovered by our research. In *Southern Pac. Transportation Co.* v. *Dolan* (1972) 27 Cal.App.3d 534 [104 Cal.Rptr. 131], third parties were injured when a car driven by a minor collided with a railroad handcar. The third parties sued both the minor and the railroad, recovering judgment against both. When the minor was unable to pay his full share under the then-controlling rules for contribution, the railroad satisfied the judgment of the plaintiff and obtained a judgment of contribution against the minor. It then filed a complaint against the minor's parents for contribution, on the theory that they stood in their son's shoes for purposes of such liability.

---

[5] It will be recalled that the Currys have not been named as defendants. We do not imply that *both* the victim and District could recover up to the statutory limits of section 1714.1.

The railroad's complaint relied on three Vehicle Code sections imputing negligence or imposing strict liability in three situations: on the person signing the minor's application for a driver's license, on the parent having custody of a minor causing damage due to "negligence or wilful misconduct," and on the owner of a vehicle driven by one who causes damage. Although the language of these three statutes differed slightly, the parental liability statute (Veh. Code, § 17708) included the same significant language as does section 1714.1: the minor's act ". . . shall be imputed to the parent[ ] . . . *for all purposes of civil damages and the parent*[ ] . . . *shall be jointly and severally liable with the minor . . . .*"[6] (Veh. Code, § 17708, as it read at the time the *Dolan* cause of action arose.)

Nevertheless, the court held that the railroad could not recover from the parents under any of the statutes. It first rejected the railroad's argument that the language of the statutes was perfectly clear and needed no interpretation, citing cases which found ambiguities in the statutes in other contexts. (E.g. *Weber* v. *Pinyan, supra,* commenting upon the construction of the word "negligence.") The court then relied on cases holding that the purpose of all three statutes was to provide a means of financial protection to the "tragically large group of persons" injured on the highways. In so doing, it cited, inter alia, *Burgess* v. *Cahill* (1945) 26 Cal.2d 320 [158 P.2d 393, 159 A.L.R. 1304]—a case defining "permissive use" under the owner's liability statute——and several other cases not particularly relevant to our issue.[7] The *Dolan* court apparently believed that the policy of affording an avenue of compensation to injured parties was exclusive, and therefore left no room for the joint tortfeasor. We think this conclusion was unwarranted, and we decline to follow it.

At the time that case was decided, the law of equitable indemnity was in its infancy. Although there was a statutory right of contribution, by which

[6]The other two statutes discussed in *Dolan* provided that ". . . any civil liability of a minor . . . is hereby imposed upon the person who signed and verified the application of the minor for a license and the person shall be jointly and severally liable with the minor . . . ." (Veh. Code, § 17707) and "Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of the motor vehicle . . . and the negligence [of the permissive user] shall be imputed to the owner for all purposes of civil damages." (Veh. Code, § 17150, as it then read.)

[7]The other cases upon which the *Dolan* court relied involved two related, but distinct, issues of *insurance* coverage (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) 58 Cal.2d 142 [23 Cal.Rptr. 592, 373 P.2d 640], and *Glens Falls Ins. Co.* v. *Consolidated Freightways* (1966) 242 Cal.App.2d 774 [51 Cal.Rptr. 789]), the question of whether the owner must suffer the imputation of negligence when it is the owner who is the injured plaintiff (*Mason* v. *Russell* (1958) 158 Cal.App.2d 391 [322 P.2d 486]), and whether the owner was liable when the injury occurred on private property whether than a public highway. (*Webster* v. *Zevin* (1947) 77 Cal.App.2d 855 [176 P.2d 960].)

one tortfeasor judgment debtor could recover from his cojudgment debtors any portion of the judgment which he had paid in excess of his pro rata share (see Code Civ. Proc., § 875 et seq.), noncontractual indemnity was available only where the parties' roles in the injury fell into the "passive-active" or "primary-vicarious" categories. (See *Alisal Sanitary Dist.* v. *Kennedy* (1960) 180 Cal.App.2d 69, 75 [4 Cal.Rptr. 379].) The establishment of a right to such indemnity resulted in a *total* shifting of liability from one who had been compelled to pay a judgment based on his imputed or constructive fault, to a joint tortfeasor who was actively and personally negligent. Other than pro rata contribution rights, no provisions were made for partially shifting the burdens among defendants whose fault was qualitatively analogous.

At the time, a plaintiff's contributory negligence was relevant only in a similarly "all or nothing" manner. If a plaintiff was found to be contributorily negligent to any extent, he could not recover against a defendant whose greater fault had also contributed to the injury. However, this harsh doctrine was abrogated in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], in which the court adopted a rule of "comparative fault." The court first detailed the inequities inherent both in the "all or nothing" rule of contributory negligence, and the "50 per cent system" of comparative fault under which a plaintiff was completely barred if his own negligence equalled or exceeded 50 percent, but could recover a proportional amount of his damages of his fault measured at 49 percent or less. It then adopted a "pure" comparative fault system, "the fundamental purpose of which shall be to assign responsibility and liability for damage in direct proportion to the amount of negligence of both parties." (13 Cal.3d at p. 829.)

*Li* represented a long step forward on what the court deemed "a proper and just direction;" the next step transported the principles of comparative fault into the context of multiple tortfeasors. In *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], the court declined to abolish the rule of joint and several liability, thus ensuring the plaintiff's continuing ability to collect his entire damages as long as any defendant was solvent. However, it did establish a procedure and a rule by which multiple tortfeasors could establish the parties' relative percentages of fault, and by which a judgment debtor who paid more than his share could recover from joint tortfeasors who had paid less than their proportionate shares, as calculated by the percentages of fault. (20 Cal.3d at p. 599.) Thus, a new form of indemnity among tortfeasors was recognized in the interests of the equitable sharing of loss among multiple tortfeasors. (20 Cal.3d at p. 591.)

Subsequent cases have extended the rationale and rule of *American Motorcyle Assn.* to demands between two strictly liable defendants (*Gentry*

*Construction Co.* v. *Superior Court* (1989) 212 Cal.App.3d 177, 182-183 [260 Cal.Rptr. 421]) and, with particular relevance to this case, to demands by a negligent defendant against a strictly liable defendant.[8] (*GEM Developers* v. *Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal.App.3d 419, 431 [261 Cal.Rptr. 626]; see also *Safeway Stores, Inc.* v. *Nest-Kart* (1978) 21 Cal.3d 322, 328 [146 Cal.Rptr. 550, 579 P.2d 441].) *GEM Development* also confirms the defendant's general power to pursue any other joint tortfeasor for indemnity, rejecting a contention that indemnity could only be sought from a joined defendant. (213 Cal.App.3d at p. 419; see also *American Motorcycle Assn.*, *supra*, 20 Cal.3d at pp. 604-607.)

Finally, we note the alteration of the rules of joint and several liability among tortfeasors accomplished by "Proposition 51," codified at section 1431 et seq. These statutes attempt to further fine-tune proportionate liability by relieving each defendant of more than his proportionate share of damages for noneconomic losses—thus partially abolishing the rule of joint and several liability among tortfeasors.

Thus, the 18 years since *Li* was decided have seen a sea of change in the way liability is measured and shifted among defendants. Without exception, these cases and statutes pursue the goal of the equitable sharing of financial responsibility for a plaintiff's damages among all those legally liable therefor. It is in this modern context that we will consider section 1714.1.

We next examine whether section 1714.1 may reasonably be said to serve other social and legislative purposes. Although the court in *Dolan* ended its inquiry when it decided that the policy behind the cited statutes was to provide compensation for injured parties, we do not think that the recognition of one policy requires the elimination of all others. For example, in *General Ins. Co.* v. *Faulkner* (1963) 259 N.C. 317 [130 S.E.2d 645, 651-652, 8 A.L.R.3d 601], the court held that an insurer was entitled to the benefit of a parental liability statute, where it had paid its insured for damage inflicted by the minor. To hold otherwise, the court observed, would give the parents the benefit of the insurance without their "having paid a cent for it." Similarly, in *Liberty Mutual Ins. Co.* v. *Davis* (1977) 52 Ohio.Misc. 26 [6 Ohio Op.3d 108, 368 N.E.2d 336, 337-338], the court held that there was no reason to give the parent the benefit of the victim's prudence in obtaining insurance. Furthermore, the court noted that one purpose of the parental

---

[8]Section 1714.1 provides for an imputation of misconduct to the parent, making the parent theoretically a joint *affirmative* wrongdoer with the minor. However, the parent's liability is frequently described as "vicarious" or "strict." (See *Robertson* v. *Wentz*, *supra*, 187 Cal.App.3d at p. 1293.) Thus, we find the extensions of the basic *American Motorcyle Assn.* rule significant to our analysis of the policies served by the alternative constructions of section 1714.1 in the case before us.

liability laws is to encourage responsibility in parents—that is, to encourage parents to exercise effective control over their children. This goal would not be aided by a construction which made parental liability contingent on whether or not a victim had insurance covering the loss.

We think this policy is significant. California has recently amended its penal statute governing contributing to the delinquency of a minor to permit the imposition of criminal liability on a parent who fails to make reasonable efforts to control a minor child. (Pen. Code, § 272; see *Williams* v. *Garcetti* (1993) 5 Cal.4th 561 [20 Cal.Rptr.2d 341, 853 P.2d 507], upholding the constitutionality of the statute.) In an era of increasing juvenile crime, society is clearly losing its patience with parents who are indifferent to the irresponsible, malicious, or even vicious propensities of their offspring.[9]

It is true that section 1714.1 does not require parental fault before liability is imposed. However, this does not compel the conclusion that it does not serve the purpose of encouraging responsible parenting. A parent who acts unreasonably in raising his or her child may be subject to penal liability (Pen. Code, § 272) or unlimited civil liability. (See *Reida* v. *Lund* (1971) 18 Cal.App.3d 698, 705 [96 Cal.Rptr. 102], noting that a parent who acts negligently in permitting a minor child to have access to a firearm may be subject to unlimited liability based on his own fault, despite the monetary damage limits of section 1714.3, which imputes the act of the minor in shooting the firearm to the parent analogously to section 1714.1.) By contrast, a parent who is not charged with active fault faces only limited financial liability. Nevertheless, section 1714.1 constitutes a meaningful incentive to the parent; $10,000 is not chicken feed, even in these days of inflated prices and devalued currency.

Returning to the statutory language, we note that section 1714.1 imputes the child's negligence to the parent *"for all purposes of civil damages."* The *Dolan* court found this language ambiguous, and construed it to apply only to third party plaintiffs. Insofar as we agree that it is not absolutely clear, we believe that "all purposes" should be read to include the equitable allocation of damages among tortfeasors.

To summarize, we find *Dolan* unpersuasive for two reasons. First, the modern trend of the law clearly favors the equitable sharing of losses among tortfeasors. Even if section 1714.1 was designed to afford relief to injured

---

[9]In this case, the minor is accused of forcibly compelling plaintiff—helpless in a wheelchair—to orally copulate him until he ejaculated. It hardly seems unreasonable to impose liability on parents who have not managed to persuade their child that such behavior is improper.

third parties by imposing liability on a presumably financially responsible parent, we can see no reason why that liability should not run also in favor of a concurrently liable tortfeasor. If the minor is unable to respond in damages, we do not believe that the parent should be immune from a claim for equitable indemnity, made by a tortfeasor who has been compelled to pay all or a portion of the minor's fair share of the loss. If plaintiff here had elected to join the Curry parents as defendants, their potential liability would be obvious; the fact that plaintiff did not so join them should not insulate them from a duty to contribute. (See *American Motorcycle Assn. v. Superior Court, supra,* 20 Cal.3d at pp. 604-607.) The District's actual obligation of payment should not depend on the fortuitous decision of the plaintiff. (See *General Ins. Co. v. Faulkner, supra,* 130 S.E.2d 645, refusing to make the application of the parental liability statute depend on whether the victim was insured and had assigned its claim to the insurer by operation of law.)

Second, our construction is in accord with the trend of expanding parental liability for the wrongful acts of their children. Section 1714.1 clearly expresses the policy that parents should stand in the shoes of their children for the purpose of paying damages caused by the children, for which the children are "judgment proof." Although the statute does not require proof of fault, we think it is founded on the implicit understanding that a parent has the duty and opportunity to control, supervise, and train his or her child in the ways of responsible behavior. If the parent fails to do so, it is fair to impose liability on the parent—and, in our view, fair to require the parent to compensate not only the "innocent third party" injured by the child, but also a joint tortfeasor who, due to the child's financial status, would otherwise be required to pay the child's share of the damages caused.

Accordingly, the trial court correctly overruled the Currys' demurrer to the fifth cause of action of the District's cross-complaint. The petition is denied, and the alternative writ is discharged.

Hollenhorst J., and McKinster J., concurred.

Petitioners' application for review by the Supreme Court was denied February 3, 1994.