## MATTER OF HOWARD SORRELL AND CALVIN SORRELL

[No. 341, September Term, 1973.]

*Decided February 14, 1974.*

180

The cause was argued before ORTH, C. J., and MOYLAN and MENCHINE, JJ.

*Solomon Reddick* for appellants.

*Mary Elizabeth Kurz, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Walter Balint, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

On November 24, 1972 separate juvenile petitions against Howard Sorrell (000210) and Calvin Sorrell (000358) were filed. Each petition alleged that the two brothers "in company with Thurston Sorrell (adult)" did assault "one Russell Sapp by striking him with fists," on October 29, 1972. The petitions charged that each was delinquent.

A juvenile master, after hearing on February 2, 1973, found both to be delinquent children. Exceptions to the finding were filed and the case heard *de novo* in the Circuit Court of Baltimore City, Division for Juvenile Causes, on March 1, 1973. The juvenile judge found both to be delinquent.

On April 4, 1973 a disposition hearing was held and orders for probation as to each juvenile were passed by the court.

At the April 4, 1973 hearing the juvenile judge declared his intention to pass an order requiring the parents of the two youths "to pay the sum of $2,000.00 by way of restitution to Mr. and Mrs. Sapp [parents of assaulted child] on an installment basis through the probation department.

The proposed action apparently was to be taken under authority granted by Article 26, § 71A,[1] as implemented procedurally by Article 26, § 70-22 [2] and Maryland Rule 922.

Article 26, § 71A reads as follows:

"Any judge having, sitting, and exercising

---

1. New Code: Courts and Judicial Proceedings, Sec. 3-839.
2. New Code: Courts and Judicial Proceedings, Sec. 3-837.

jurisdiction in any juvenile cause, lawfully before him, shall, in his discretion, have power to award a judgment in favor of a wronged person, partnership, corporation or other business entity, or the federal, State or local government or any agency thereof and against any parent for acts of wilful or malicious destruction or theft of any property owned by such wronged person, business entity or government or any medical expenses incurred by an injured person wilfully or maliciously caused or committed by the minor child of such parent, or such judge may order such parent to make restitution to the person, business entity or government whose property has been so destroyed or stolen or who has incurred such medical expenses and shall have full power to cite for contempt for a violation thereof if the facts of a particular case before him indicates sufficient ability of such parent to comply with such order. The limit of such parent's liability for all damages including medical expenses under this section shall not exceed the sum of one thousand dollars ($1,000.00). The court may pass an appropriate order requiring such minor child who wilfully or maliciously destroys or steals property or wilfully or maliciously injures another to make restitution or pay the medical expenses himself if such is feasible considering the age and circumstances of the child, and the requirement of the child's making restitution or paying the medical expenses shall precede any liability of the parent hereunder."

§ 70-22 in appropriate part reads as follows:

"The court on its own motion * * * may make an appropriate order directing * * * or otherwise controlling the conduct of a person who is properly before the court, * * * if:

(1) An order of disposition has been made in a proceeding under this subtitle;

(2) The court finds that the conduct: * * *

    (iv) will provide reimbursement of costs, expenses, or restitution; and

(3) Notice of the application or motion and the grounds therefore have been given as prescribed by Maryland Rules."

Rule 922 reads as follows:

"Controlling Conduct of Person Before the Court.

a. *On Motion or Application.*

The court, upon its own motion or on application of any individual, agency or institution having supervision, legal custody or other interest in the child, may direct, restrain or otherwise control the conduct of a person who is properly before the court in accordance with Code, article 26, section 70-22.

b. *Notice of Hearing — Content.*

The clerk shall issue notice of a hearing setting forth in concise language the nature of and the grounds for the relief requested. Such notice shall be served by personal service or registered mail, not less than two days before the hearing, upon the parties affected by the relief sought, unless such notice is waived."

For procedures required of the clerk, see also Maryland Rule 906.

No charging document against the parents was filed. On May 1, 1973, after a hearing, separate orders in the two cases were passed, each requiring both parents jointly to make restitution in the amount of $1,000.00 each.

On May 21, 1973 an appeal was filed encompassing all judgments and orders. That appeal was filed more than thirty (30) days from the date of entry of the orders for probation against the juveniles (April 4, 1973), but was

within thirty days from the date of the orders for restitution against the parents (May 1, 1973).

The lower court, acting *sua sponte* under Rule 1013, on June 1, 1973 struck the appeal of May 21, 1973 as untimely filed.

On June 28, 1973 separate appeals were filed with the two cases combined here within a single record. The appellants' brief raises, or seeks to raise, the following issues:

"I. Was the evidence sufficient to support a finding of delinquency?

II. Is the finding of delinquency a part of the adjudicatory hearing or a part of the disposition hearing?

III. Was the action of the Trial Judge erroneous when he ordered restitution in the amount of $2,000.00?

IV. Was the action of the Trial Judge proper when he struck the Appellants' appeal? "

Pursuant to Rules 322 and 1055, the State filed a motion *ne recipiatur* as to Issues I, II and III upon the ground that they are not before the Court.

### Issues I and II under the Motion

Issues I and II clearly are not before us. The disposition hearing was a final hearing. Art. 26, § 70-17.[3] Although an appeal to this Court lies, (§ 70-25) the appeal filed on May 21, 1973 as to the orders relating to Howard Sorrell and Calvin Sorrell, was not taken within thirty days from April 4, 1973. It was not timely filed. The trial court's action as applied to these orders was correct. The State's motion *ne recipiatur* as to Issues I and II will be granted. Rule 1012. *Blackstone v. State,* 6 Md. App. 404, 251 A. 2d 255.

### Issue III under the Motion

The May 21, 1973 appeal in express terms related to all

---

3. New Code: Courts and Judicial Proceedings, Sec. 3-829.

final orders. It is clear that the appeal of that date was timely filed as to the orders requiring parental restitution.

The State's motion *ne recipiatur* as to Issue III suggests, however, that the subject appeal is from the lower court's order of June 1, 1973 only and that all issues attempted to be raised by the appeal of May 21, 1973 must abide subsequent action. Conceding that the parents ultimately would be entitled to appeal the sufficiency of the restitution orders, the State urges that the appeal filed on May 21, 1973 wholly was aborted by the trial court's action in striking that appeal. We do not agree.

It is true, of course, that when the trial court exercises the powers granted by Rule 1013, our preliminary inquiry on subsequent appeal is the determination from the record whether the appeal had been timely taken. If the record shows that it was not, the appeal will be dismissed. On the other hand, where, as here, the record shows that the trial court erred in striking the earlier appeal, all issues timely presented by the latter will be heard on the merits. Fragmented appeals would otherwise result.

The appeal of May 21, 1973 was timely filed as to the judgments for restitution against the parents of the juveniles. Accordingly, we deny the State's motion *ne recipiatur* as to Issue III.

### Constitutional Aspects of Issue III

The power of the court to pass the restitution orders has been raised. In the absence of statute, a parent is not responsible for the wrongful acts of his minor child. *Kerrigan v. Carroll,* 168 Md. 682, 179 A. 53.

Article 26, § 71A, previously quoted, attempts to alter that common law rule.

Forty-six states [4] are said to have enacted statutes imposing strict vicarious liability upon parents for damages caused by wilful misconduct of their infant children. Most of the statutes provided limited reimbursement for property

---

4. *55 Iowa Law Review 1037* (1970) The Iowa Parental Responsibility Act.
*47 Notre Dame Lawyer 1321* (1972) A Constitutional Caveat on the Vicarious Liability of Parents.

damage only. Fourteen, including that of Maryland, impose limited strict vicarious liability both for property damage and for medical expenses stemming from personal injuries.

The constitutionality of such statutes has been attacked in four cases. In *General Insurance Co. of America v. Faulkner*, 130 S.E.2d 645 [North Carolina]; *Kelly v. Williams*, 346 S.W.2d 434 [Texas Civil Appeals]; and *Mahaney v. Hunter Enterprises, Inc.*, 426 P. 2d 442 [Wyoming] the constitutionality of the statutes was upheld. In *Corley v. Lewless*, 182 S.E.2d 766 [Georgia] the statute was held unconstitutional.

*Faulkner, supra,* thus explicated its position favoring constitutionality (p. 650):

> "[The statute's] rationale apparently is that parental indifference and failure to supervise the activities of children is one of the major causes of juvenile delinquency; that parental liability for harm done by children will stimulate attention and supervision; and that the total effect will be a reduction in the antisocial behavior of children."

thereafter declaring:

> "It is our opinion, and we so hold, that the enactment by the General Assembly of G.S. §1-538.1 is within the police power of the State of North Carolina, and that it is not violative of the provisions of Article I, Section 17, of the State Constitution, or of the provisions of the Fifth Amendment to the Federal Constitution."

In *Kelly, supra* (p. 437), the rationale for constitutionality was centered in its adoption of the postulate of a law review article that "* * * these legislatures * * * have decided that in all fairness, it is better that the parents of these young tortfeasors be required to compensate those who are damaged, even though the parents be without fault, rather than to let the loss fall upon the innocent victims." [5]

---

5. *3 Villanova Law Review 529.*

In *Mahaney, supra,* the rationale as to constitutionality appears (page 444) to consist of the acceptance of the penal postulate of *Faulkner* and the compensatory postulate of *Kelly.*

*Corley* announced only in the broadest terms its basis for rejection of the Georgia statute, saying at page 770:

> " * * * in our opinion, Code Ann. Sec. 105-113 contravenes the due process clauses of the State and Federal Constitutions * * * and is void."

In its discussion of the cases of *Faulkner, Kelly* and *Mahaney,* all *supra, Corley* emphasized the limited liability imposed by the statutes involved in those cases as compared with the unlimited liability imposed by the Georgia statute. Even acceptance of the inference suggested by *Corley,* that limitations upon the *amount* of vicarious parental liability would affect the constitutionality of a legislative *right* to impose it, the appellants here are not aided. The vicarious liability imposed by the subject statute is quite limited.

In *State v. Seney Co.,* 134 Md. 437, 107 A. 189, the Court of Appeals in discussions relating to the proper exercise of the police power, pointed to its ever widening extension, by saying at page 447 [193]:

> "In the process of the application of that power to new and varied conditions affecting the public welfare, it has been gradually extended beyond its original scope. It was formerly concerned with the protection of the public health, morals and safety. By our own recent decisions it is now recognized as extending to the promotion of the general welfare."

In *Solvuca v. Ryan & Reilly Co.,* 131 Md. 265, 276, 101 A. 710, 713, the Court of Appeals of Maryland cited with approval the views expressed by Mr. Justice Pitney:

> "Much emphasis is laid upon the criticism that the act creates liability without fault. This is sufficiently answered by what has been said, but

we may add that liability without fault is not a novelty in the law. * * *" [6]

In *Allied American Co. v. Commissioner*, 219 Md. 607, 616, 150 A. 2d 421, 427, it was said:

"Essentially the police power of a state is no more than the power to govern. *Baltimore Gas Co. v. State Roads Comm.*, 214 Md. 266, 279; *Capital Transit Co. v. Bosley*, 191 Md. 502, 514. The power justifies regulations designed to promote the public convenience or the general prosperity, as well as those to promote public safety, health and morals, since it extends to the satisfying of great public needs and the promotion of the general welfare. *Maryland Coal and Realty Co. v. Bureau of Mines*, 193 Md. 627; *Bacon v. Walker*, 204 U. S. 311, 51 L. Ed. 499; *C. B. & Q. Railway v. Drainage Comm'rs*, 200 U. S. 561, 50 L. Ed. 596; *Nebbia v. New York*, 291 U. S. 502, 78 L. Ed. 940. The current thinking of the Supreme Court would seem to be illustrated by *Williamson v. Lee Optical Co.*, 348 U. S. 483, 99 L. Ed. 563, where the Court, in effect, held that state legislation, imposing regulations under the police power to correct an evil at hand, is valid if it might have been thought by the legislature that the particular measure was a rational way to correct it.

The due process clause does not, any more than the contract clause, inhibit a state from insisting that all contract and property rights are held subject to the fair exercise of the police power. *Atlantic Coast Line v. Goldsboro*, 232 U. S. 548, 558, 58 L. Ed. 721. The exercise of the power is fair when the purpose is a proper public one and the means employed bear a real and substantial relation to the end sought and are not arbitrary or oppressive. The Supreme Court said in *Erie R.R. Co. v. Williams*, 233 U. S. 685, 700, 58 L. Ed. 1155: 'It is hardly

---

6. *New York Central R.R. Co. v. White*, 243 U. S. 188.

necessary to say that cost and inconvenience (different words, probably, for the same thing) would have to be very great before they could become an element in the consideration of the right of a State to exert its reserved power or its police power.' There are many holdings that enforcement of uncompensated obedience to a regulation passed in the legitimate exercise of the police power is not a taking without payment of just compensation."

In *A & H Transp. Inc. v. Baltimore,* 249 Md. 518, 240 A. 2d 601, it was said at pages 528 and 529 [606]:

"It has long been settled in Maryland that, in the exercise of its police power, the legislature has broad discretion in determining what the public welfare requires and what remedies are appropriate for the protection and promotion of that determination. * * *

The function of the courts is, however, to ascertain whether an ordinance exceeds constitutional limits. * * * These limits are not exceeded under the due process clauses of the Maryland and Federal Constitutions unless the party challenging the ordinance can show that it is arbitrary, oppressive, or unreasonable."

The legislative determination here demonstrates a legitimate State interest in a matter affecting the general welfare. The remedy selected for the protection and promotion of that determination has not been shown to be arbitrary, oppressive or unreasonable. Article 26, § 71A as implemented by the procedural safeguards of § 70-22 and Maryland Rule 922, does not offend against the Maryland and Federal Constitutions.[7]

7. We note legislative passage of the Criminal Injuries Compensation Act (Article 26A) with benefits in the amounts prescribed by Section 36 of the Workmen's Compensation Act. No suggestion of conflict or applicability has been raised here. We do not reach either issue.

## Propriety of Restitution Judgments
## under Issue III

As previously pointed out, no document indicating a purpose to act against the parents under § 71A ever has been filed in the cause. Both Article 26, § 70-22 and Maryland Rule 922 provide for appropriate notice of such purpose. The latter does provide, however, that the requirement for notice may be waived.

At the commencement of the hearing on May 1, 1973 the following colloquy between the court and counsel for the parents of the juveniles occurred:

"THE COURT:    As I understand this, if my recollection is correct, we have scheduled this hearing today for purposes of consideration by me of passage of an order requiring restitution to be made by Mr. and Mrs. Sorrell to the family of Russell Sapp * * * Is this your understanding of it Mr. Cohen?

MR. COHEN:    Yes, Your Honor. I think you stated at the previous hearing where the Sorrells — Calvin and Howard were here that you would not order restitution until the parents, both of the parents were here. I think the mother was here at that time and he was not and I have both of them in Court today.

THE COURT:    And due notice has been given therefore, to both parents of this Court's intention to consider passing such an order?

MR. COHEN:    Yes."

We interpret that colloquy as showing of record a waiver of notice. We conclude, accordingly, that it was permissible to conduct the hearing below.

We now consider whether that hearing was substantively sufficient to authorize extension of the judgments against the parents. We find that it was not.

Counsel for the parents sought to offer testimony by the juveniles. He pointed out that they had not testified at the delinquency hearing upon advice of counsel. In denying the request, the trial judge said: "We are not talking about the merits here at all" adding that "the relevance is the finding of delinquency." Counsel then contended that "just because they are delinquent doesn't necessarily mean that restitution will attach to that delinquency * * * I think Your Honor should know the full factual situation and exactly why Mr. Sorrell —" The Court: "Now, now, we are not going to retry the merits of the case, Mr. Cohen."

It is manifest that the trial court had concluded, erroneously we think, that entry of judgments under Article 26, § 71A flowed inevitably from the prior determination that the juveniles were delinquent. We do not so interpret the section. We hold that a judge exercising jurisdiction under that statute may act only after a hearing under Rule 922, wherein evidence is produced that is legally sufficient to support a conclusion that damages authorized by it were wilfully or maliciously caused by or committed by a child under eighteen years. The mere finding of delinquency of the juveniles does not provide such evidence.

We shall remand the cause for hearing wherein it will be determined whether the facts and circumstances surrounding the acts of the juveniles are such as would authorize extension of judgment against the parents under § 71A.

It is plain that factual findings wholly adequate to support a finding of delinquency will not necessarily support the statutory requisites for imposition of judgments against parents. The delinquency hearing (a proceeding in which they were not parties) clearly was not the forum wherein they were to defend themselves against the liability for

restitution or reimbursement under the section. Such an issue was neither presented to nor controlled by the delinquency hearing.

### Issue IV

This issue actually has been disposed of in our prior discussions of the other issues. The action of the trial court in striking the appeal of May 21, 1973 as to the orders passed on April 4, 1973 was correct. As to the orders of May 1, 1973 the action was erroneous.

> *Order of June 1, 1973 affirmed in part and reversed in part.*
> *Judgments against parent-appellants reversed and the cause remanded for further proceedings not inconsistent with this opinion.*