TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN









NO. 03-04-00446-CV






In the Matter of D. M.







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT

NO. 03-358-J277, HONORABLE BURT CARNES, JUDGE PRESIDING





O P I N I O N



 D.M. set fire to a couch, which caused extensive damage to his school. The trial court
ordered D.M.'s parents ("appellants") to pay $25,000 in restitution as part of its order of probation. 
See Tex. Fam. Code Ann. § 54.041(b) (West Supp. 2005). Appellants appeal the order, arguing that
there was insufficient evidence to support the amount of restitution ordered and that the statutes
governing restitution are unconstitutional because they violate the "open courts" provision of the
Texas Constitution and violate due process. See Tex. Const. art. I, § 13. We will affirm the order
of the trial court.


STATUTORY FRAMEWORK

 Before addressing the merits of appellants' arguments, we will review the framework
governing restitution in juvenile proceedings. The juvenile justice code, located in the family code,
was enacted for several reasons including the desire "to promote the concept of punishment for
criminal acts" and "to protect the welfare of the community and to control the commission of
unlawful acts by children." Tex. Fam. Code Ann. § 51.01(2)(A), (4) (West 2002). The code
emphasizes that both the parents and the child are responsible for the conduct of the child. Section
51.01(2)(C) states that one of the goals of the juvenile justice code is to provide "rehabilitation that
emphasizes accountability and responsibility of both the parent and the child for the child's
conduct." Id. § 51.01(2)(C) (West 2002). Further, the code was enacted "to provide a simple
judicial procedure through which the provisions of this title are executed and enforced and in which
the parties are assured a fair hearing and their constitutional and other legal rights recognized and
enforced." Id. § 51.01(6) (West 2002).

 Juvenile delinquency proceedings, although considered civil proceedings, are quasi-criminal in nature. In re M.S., 985 S.W.2d 278, 280 (Tex. App.--Corpus Christi 1999, no pet.); In
re J.R., 907 S.W.2d 107, 109 (Tex. App.--Austin 1995, no pet.). Portions of juvenile proceedings
are governed by the rules of criminal proceedings including the State's burden of proof, the right to
trial by jury, the privilege against self-incrimination, the right to trial and confrontation of witnesses,
and confessions. In re J.R., 907 S.W.2d at 109. 

 As part of a delinquency determination, the court is allowed to consider what amount
of restitution, if any, should be paid to the victim of the crime committed by the juvenile. Tex. Fam.
Code Ann. § 54.041 (West 2002 & Supp. 2005). The code allows restitution to be issued against
the juvenile or the parents of the juvenile. Id. § 54.041(b). However, the maximum amount of
restitution that parents may be required to pay as a result of their child's wilful and malicious
conduct is $25,000. Id. § 41.002 (West 2002). Further, the restitution ordered must promote the
rehabilitation of the child. Id. § 54.04(b) (West 2002 & Supp. 2005). If the court finds that the
parents have made "reasonable good faith efforts" to prevent their child from engaging in delinquent
behavior, the court shall waive any requirement that the parents pay restitution. Id. § 54.041(g). 

 Because juvenile cases are quasi-criminal, the rules pertaining to restitution in
criminal cases apply to juvenile cases. In re M.S., 985 S.W.2d at 280. The trial court has broad
discretion in determining the amount of restitution. Long v. State, 7 S.W.3d 316, 323 (Tex.
App.--Beaumont 1999, no pet.). However, the amount of restitution that may be ordered is limited
to the actual damages sustained. See Tex. Fam. Code Ann. § 54.041(c). Further, the amount of
restitution awarded must be "just," meaning it must be supported by sufficient factual evidence in
the record that the expense was incurred, but there is no requirement that the injured party prove that
the amount of expense incurred was reasonable. In re J.R., 907 S.W.2d at 109. 


BACKGROUND

 At the time of the appeal, D.M. was a thirteen-year-old boy who had previously been
diagnosed with Attention Deficit, Hyperactivity Disorder ("ADHD") for which he had taken various
medications for years. As a result of his diagnosis, D.M. was eligible for special education services
and had been enrolled in modified classes for behavior management in public school. In early
November 2003, D.M. was taken off of his ADHD medications by his physician and was placed on
anti-depressants. 

 On November 10, 2003, D.M. set off a fire alarm at school. After the incident, D.M.
was temporarily placed in an alternative program outside of his school. An admission, review, and
dismissal meeting occurred, (1) and the committee concluded that D.M. should return to his previous
school. 

 On December 2, 2003, the day after he returned to his normal school schedule, D.M.
set fire to a couch inside the school, which caused over $100,000 in damage to the school. (2) When
D.M.'s locker was searched, nearly empty bottles of rubbing alcohol and nail polish remover as well
as a can of disinfectant spray and a lighter were discovered. D.M. admitted that he brought the
rubbing alcohol and lighter from home. 

 After the incident, D.M. was taken to a detention center and then later admitted to
Meridell Treatment Center, a center for children who have emotional and behavioral problems. 
While in Meridell, D.M. underwent several psychological evaluations. In one of these evaluations,
D.M. admitted that he was fascinated by fire. He also admitted that he started experimenting with
fire when he was four or five years old and that he has done some "explosive stuff" in his backyard. 
He further stated that, although there are certain people at his school that he would like to hurt, he
has done a good job of restraining himself. 

 D.M. was released from Meridell in February 2004 and pleaded true to a charge of
felony criminal mischief. See Tex. Pen. Code Ann. § 28.03 (West Supp. 2005). The trial court
conducted a hearing to determine D.M.'s disposition and the amount of restitution to be paid. See
Tex. Fam. Code Ann. §§ 54.04 (West Supp. 2005), 54.041. At the hearing, D.M. testified that other
students picked on him and that the teachers never did anything about it even after he told them. 
Further, he stated that several boys had pressured him to pull the fire alarm and to set the fire and
had pressured him to damage other school property as well. Although D.M. agreed that he should
be held responsible for setting the fire, he also stated that the school was partially to blame for the
incident because the school did not protect him from the bullying and harassment. 

 D.M.'s father also testified at the hearing. He testified that, after the incident with
the fire alarm, he and his wife were concerned about placing D.M. back into general classes and that
they had communicated their concerns to school officials who assured them they would monitor
D.M. He also testified that he believed his liability as a parent should be limited to the replacement
cost of the couch D.M. burned and that the school should assume responsibility for the remainder
of the damage. 

 Further, he stated that he had advised his son to notify a teacher whenever he was
bullied and to walk away from the situation. He also described the discipline D.M. received at home
when he misbehaves, including revocation of computer, video game, and television privileges, and
testified that he and his wife have done everything possible to prevent D.M. from breaking the law. 
He also stated that he encouraged D.M. to tell the truth about what happened to the police and that
D.M. should take responsibility for the damage he has done.

 The assistant director for juvenile services for Williamson County, Scott Matthew,
also testified at the hearing. Matthew stated that juvenile services recommended D.M. receive
twelve months' in-home probation. Matthew recommended that the parents be required to pay the
maximum amount allowed by the family code as restitution. Matthew further testified that D.M.'s
parents have provided an "umbrella" of protection for him, which has allowed D.M. to avoid the
consequences of his actions.

 A pre-disposition social history report, which had been prepared previously, was
admitted into evidence at the hearing. The report included a statement from D.M.'s mother. In the
statement, D.M.'s mother wrote that she notified the school of the change in his medications and of
the possibility that D.M. may be suffering from bipolar disorder. She further stated that, within a
few days of the medicine change, D.M. began exhibiting strange behaviors, including trying to bite
a teacher. She also stated that she blamed the school for failing to adequately monitor D.M.'s
behavior after she informed the school of the change in his medication and for failing to take action
in light of the strange behaviors D.M. exhibited prior to setting off the fire alarm. In addition, she
stated that she had repeatedly complained to the school about D.M.'s poor social skills and lack of
friends and that she believed the school had failed D.M. by not addressing the harassing and bullying
that had previously occurred. Finally, she described D.M.'s home life. She stated that they had a
strict but loving household, that D.M. is helpful around the house, and that they did their best to
discipline D.M. for his misbehavior.

 After hearing testimony, the trial court entered an order of probation under which
D.M. was placed on in-home probation for 12 months and D.M.'s parents were ordered to pay
$25,000 in restitution: $10,000 within 30 days and $1500 per month after the first payment. The
order also required D.M. to perform 48 hours of community service and to attend a peer pressure
reversal program. Appellants appeal the portion of the probation order requiring them to pay
restitution.


DISCUSSION

 Appellants raise two issues on appeal. First, they contend that the trial court erred
when it ordered them to pay restitution because there was insufficient evidence to support the order. 
In support of this argument, appellants contend that the State must prove that the parents of a
delinquent child failed to engage in good faith efforts to prevent delinquent conduct before they may
be required to pay restitution. In their second issue, they assert that the statutes allowing a trial court
to impose a restitution requirement on the parents of a delinquent child are unconstitutional because
they violate the open courts provision of the Texas Constitution and violate due process. As part of
this argument, appellants insist that due process requires the State to prove the absence of good faith
efforts before requiring parents to pay restitution. Consequently, appellants' first issue and the due
process argument both raise a burden of proof issue: whether parents must prove "good faith efforts
to prevent delinquent behavior" to avoid being required to pay restitution or whether the State must
prove a lack of "good faith efforts" in order for the trial court to order the parents of a delinquent
child to pay restitution. Because this common question was more thoroughly briefed in the due
process portion of appellants' brief, we will address that issue first. 


Due Process Violation

 In their second issue, appellants contend that the statutes governing the imposition
of restitution violate due process by either failing to assign the burden of proof for determining
whether the parents of a delinquent child are excused from paying restitution due to their good faith
efforts to prevent delinquent behavior or by improperly assigning that burden to the parents. See
Tex. Fam. Code Ann. § 54.041(g). Appellants claim that, because of the quasi-criminal nature of
juvenile hearings, due process requires the State to prove that parents did not engage in good faith
efforts to prevent delinquent behavior beyond a reasonable doubt before restitution may be imposed. 
See McMillan v. Pennsylvania, 477 U.S. 79, 86 (1986) (in certain circumstances, reasonable-doubt
requirement applies to facts not formally identified as elements of offense charged). However, they
assert that the family code fails to assign a burden of proof for demonstrating whether the parent has
engaged in good faith efforts. Because of this failure, they contend that trial courts have the
discretion to assign the burden to either party and that this discretion violates parents' rights to due
process. See Tex. Code Crim. Proc. Ann. art. 42.037(k) (West Supp. 2005) (allowing trial court to
assign burden of proof on matters not specifically assigned by statute to whichever party "justice
requires"); (3) Tex. Fam. Code Ann. § 54.041(b). Alternatively, they contend that subsection 54.041(g)
of the family code incorrectly assigns the burden of proof for demonstrating good faith efforts to the
parents of a delinquent child. (4)
 See Tex. Fam. Code Ann. § 54.041(g). In either case, they insist that
the statutory scheme governing restitution allows for arbitrary and discriminatory application,
violates due process, and deprives parents of a reasonable opportunity to prepare a meaningful
defense. Cf. Clark v. State, 665 S.W.2d 476, 482 (Tex. Crim. App. 1984) (penal statutes must be
drafted in manner that does not encourage arbitrary and discriminatory enforcement). 

 We will first address the question of whether the family code assigns the burden of
proving good faith efforts. This determination necessarily involves statutory construction, which we
review de novo. See In re Forlenza, 140 S.W.3d 373, 376 (Tex. 2003). When construing a statute,
we must determine and give effect to the Legislature's intent. City of San Antonio v. City of Boerne,
111 S.W.3d 22, 25 (Tex. 2003). In determining legislative intent, we must look to the entire act and
not just isolated portions. Id. Therefore, we must read the statute as a whole and must give effect
to every part. Id. 

 The family code requires the State to prove beyond a reasonable doubt that a child
has engaged in delinquent conduct, see Tex. Fam. Code Ann. § 54.03(f) (West 2002 & Supp. 2005),
and the code of criminal procedure requires the State to prove by a preponderance of the evidence
the amount of damage sustained as a result of the delinquent behavior, see Tex. Code Crim. Proc.
Ann. art. 42.037(k). Once the delinquent behavior is proven, the family code specifies that the
parents of a delinquent child are liable for the property damage caused by "the wilful and malicious
conduct of a child who is at least 10 years of age but under 18 years of age." Tex. Fam. Code Ann.
§ 41.001 (West 2002); see also id. § 51.01(2)(C) (specifying that one of the purposes of juvenile
justice code is to "provide treatment, training, and rehabilitation that emphasizes the accountability
and responsibility of both the parent and the child for the child's conduct"). In addition, the family
code authorizes courts to impose restitution against the parents of a child who has "engaged in
delinquent conduct . . . arising from the commission of an offense in which property damage . . .
occurred." Id. § 54.041(b). However, section 41.002 of the family code limits the amount of
damages that may be recovered to actual damages, which may not exceed $25,000 per occurrence. 
Id. § 41.002 (West 2002). 

 When construed together, sections 41.001, 51.01(2)(C), and 54.041(b) of the family
code establish a scheme in which, after the wilful delinquent conduct of their child is proven, parents
are per se liable for the actions of their children. However, subsection 54.041(g) of the family code
requires the parents to be excused from liability for the actions of their child if the court makes a
finding that the child engaged in the delinquent behavior despite the parents' good faith efforts. 
Specifically, subsection 54.041(g) of the family code provides as follows: 

On a finding by the court that a child's parents or guardians have made a reasonable
good faith effort to prevent the child from engaging in delinquent conduct or
engaging in conduct indicating a need for supervision and that, despite the parents'
or guardians' efforts, the child continues to engage in such conduct, the court shall
waive any requirement for restitution that may be imposed on a parent under this
section.



Id. § 54.041(g) (emphasis added). 

 This provision in no way indicates that parents enjoy a presumption of "good faith
efforts" and does not qualify the legal obligations created by section 41.001 in any manner. Given
the relevant family code sections referenced above, we can only conclude that the family code places
the burden on parents of a delinquent child to prove that their child engaged in the delinquent
behavior in question despite their good faith efforts. Cf. Martin v. Ohio, 480 U.S. 228, 236 (1987)
(even in criminal context, legislature may place burden of proving affirmative defense on defendant
without violating due process). We must now consider whether the assignment of this burden
violates due process. 

 At common law, the parent-child relationship was not considered a proper basis for
imposing vicarious liability on parents for their child's delinquent behaviors. See General Ins. Co.
of Am. v. Faulkner, 130 S.E.2d 645, 648 (N.C. 1963). However, this view of the parent-child
relationship changed in response to increases in juvenile delinquency and to frustration with the
outcome under the common law as leaving an injured victim with no legal recourse. Id.; see also 
Greater Houston Transp. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990) (parent-child relationship
imposes duties of supervision and control not present in other types of relationships, including legal
responsibility to prevent children from committing delinquent acts); Restatement (Second) of Torts
§ 316 (1965) (parent under duty to control minor child to prevent child from intentionally harming
others). 

 In response to this changing view of the parent-child relationship, Texas and other
states enacted statutes imposing liability on the parents of delinquent children for damage caused by
their children. Cf. In re Sorrell, 315 A.2d 110, 114 (Md. App. 1974) (describing similar statutes that
have been enacted in other states). Some of these statutes have been attacked on constitutional
grounds similar to the ones raised in this case, but courts have upheld the constitutionality of these
statutes. See, e.g., In re Sorrell, 315 A.2d at 116 (concluding statute imposing liability on parents
of delinquent child for property damage and for medical bills for injuries caused by delinquent
behavior constitutional); Faulkner, 130 S.E.2d at 650 (statute within police power of state and does
not violate federal or state constitutions); Mahaney v. Hunter Enters., Inc., 426 P.2d 442, 444 (Wyo.
1967) (concluding statute constitutional). But see Corley v. Lewless, 182 S.E.2d 766, 770 (Ga. 1971)
(concluding that statute imposing unlimited liability on parents of delinquent child violates due
process). Texas courts have also concluded that prior statutes holding parents liable for the
delinquent actions of their children were constitutional. See Buie v. Longspaugh, 598 S.W.2d 673
(Tex. Civ. App.--Fort Worth 1980, writ ref'd n.r.e.) (upholding former sections 33.01 to 33.03 of
the family code, which authorized holding parents liable for wilful and malicious conduct of their
children up to $5,000); Kelly v. Williams, 346 S.W.2d 434 (Tex. Civ. App.--Dallas 1961, writ ref'd
n.r.e.) (upholding former statute that authorized victim to recover up to $300 from parent of child
who maliciously and wilfully destroys property). 

 The rationale for finding these various statutes constitutional has varied. In In re
Sorrell, the court concluded that the statutes in question were a valid exercise of the State's police
power to protect the general welfare and, therefore, did not violate the due process clause. 315 A.2d
at 166; see also Atlantic Coast Line v. Goldsboro, 232 U.S. 548, 558 (1913) (due process clause does
not have effect of overriding power of State to establish regulations reasonably necessary to secure
safety or general welfare of the community). Similarly, in Faulkner, the court concluded that the
statute did not violate due process and explained:


that parental indifference and failure to supervise the activities of children is one of
the major causes of juvenile delinquency; that parental liability for harm done by
children will stimulate attention and supervision; and that the total effect will be a
reduction in the antisocial behavior of children.


130 S.E.2d at 650.

 Comparably, in Buie, the court concluded that the purpose of delinquency statutes was
to "protect and compensate property owners from the wilful and malicious destruction of their
property by minors" and that holding parents liable for the actions of their children provides the
"greatest amount of encouragement for parents to train, control, and discipline their children." Buie,
598 S.W.2d at 676. In Kelly, the court concluded that it is better for the parents of delinquent
children to be held liable for the damage their children cause, even if the parents are without fault,
than to allow "the loss [to] fall upon the innocent victims." Kelly, 346 S.W.2d at 438. 

 These same justifications weigh in favor of finding that placing the burden of proving
good faith efforts on the parents is constitutional. Further, unlike other state statutes that were held
to not violate due process, the family code provides parents with a defense to liability if they can
prove that their child engaged in the delinquent conduct despite their good faith efforts. Tex. Fam.
Code Ann. § 54.041(g); see also Faulkner, 130 S.E.2d at 650 (statute holding parents liable for
action of child satisfied due process because it required person seeking recovery to establish that (1)
minor was under the age of 18 when action committed and (2) minor maliciously or wilfully
destroyed property). Appellants in this case were allowed to testify and present evidence regarding
their parenting efforts and the extent of liability they believed they should be subjected to. They
were afforded the fundamental requirements of due process: they were notified of the disposition
hearing and were given an opportunity to be heard in a meaningful manner. Cf. Mathews v.
Eldridge, 424 U.S. 319, 333 (1976); Texas Workers' Comp. Comm'n. v. Patient Advocates of Tex.,
Inc., 136 S.W.3d 643, 658 (Tex. 2004). In addition, despite the substantial amount of damage
caused by D.M., the family code limited the appellants' total liability to $25,000. See Corley, 182
S.E.2d 766 (statute subjecting parents to unlimited liability for acts of children unconstitutional). 
Finally, placing this burden of proof on parents is appropriate given that parents have unique access
to and control over their children and given that generally parents alone will know of their good faith
efforts to prevent their children from engaging in delinquent behavior. 

 Accordingly, we hold that allowing courts to impose restitution on parents of
delinquent children and placing the burden on parents to prove their good faith efforts to prevent
delinquent behavior as a defense to liability does not allow for arbitrary and discriminatory
application, violate due process, or deprive parents of a reasonable opportunity to prepare a
meaningful defense. Therefore, we overrule this issue on appeal. 

Open-Courts Violation

 In their second issue, appellants also contend that provisions of the family code
authorizing the trial court to impose restitution against the parents of a delinquent child violate the
open-courts provision of the Texas Constitution. See Tex. Fam. Code Ann. §§ 54.041(b); 54.048
(West 2002) (authorizing trial court to require restitution be paid by child or child's parents). They
assert that, at common law, parents had no duty to pay for the criminal acts of their children. See,
e.g., Chandler v. Deaton, 37 Tex. 406 (1873) (no presumption growing out of relationship between
parent and child that would hold father responsible for crime committed by his minor child, unless
it be shown that father in some way was implicated as principal or accessory). They further argue
that sections 54.041(b) and 54.048 of the family code and their predecessors abrogated parents'
common law "right" to not be held liable for the criminal acts of their children. Tex. Fam. Code
Ann. §§ 54.041(b); 54.048.

 Appellants claim that these statutes violate the open-courts provision because they
abrogate a common law right without providing an alternate remedy or, alternatively, provide a
remedy that is contingent upon an impossible condition. See, e.g., Sax v. Votteler, 648 S.W.2d 661,
667 (Tex. 1983) (statute specifying two year statute of limitations for medical malpractice claims
violated open courts provision because minors cannot file suit due to legal incapacity and cannot sue
parents for failure to file on their behalf due to parent-child immunity). Specifically they assert that
parents will be unable to recover from their children the amount of restitution paid due to the
doctrine of parent-child immunity and that, in their case, the only other party that they might recover
from is Round Rock Independent School District, which is immune from suit. 

 The "open courts" provision reads as follows: "All courts shall be open, and every
person for an injury done him, in his lands, goods, persons or reputation, shall have remedy by due
course of law." Tex. Const. art. I, § 13. The open courts provision ensures that citizens bringing
common law causes of action will not unreasonably be denied access to the courts. Sax, 648 S.W.2d
at 664. To prove an open courts violation, a litigant must show that he has a cognizable common
law cause of action that is being restricted and must show that the restriction is arbitrary or
unreasonable when balanced against the purpose of the statute. Id. at 666. The legislature violates
the open courts provision when it makes a remedy by due course of law contingent on an impossible
condition. See Nelson v. Krusen, 678 S.W.2d 918, 921 (Tex. 1984). 

 In support of their arguments, appellants cite to various cases in which courts have
concluded that a statute violated the open courts provision because it abrogated a common law right
to sue by shortening the time period for filing suit (5) and to a case in which the court concluded that
requiring a party to provide the city with notice of a defective condition prior to the person being
injured imposed an unreasonable condition precedent to recovery. (6) 

 These cases have little applicability to the present issue. They involve instances in
which a litigant's right to sue has been curtailed due to the passage of legislation, such as the
imposition of a statute of limitations barring a suit if it is not filed within a certain time period. No
common law cause of action is being restricted by the statutes involved in the present case: the
"right" not to be held liable for the actions of another does not constitute a cause of action. (7) Further, there is a special relationship between a parent and a child that imposes a
duty on the parent to control the child's conduct. Greater Houston Transp., 801 S.W.2d at 525; see
also Restatement (Second) of Torts § 316 (1965) (parent under duty to control minor child to prevent
child from intentionally harming others). Because of this special relationship, the family code
authorizes the court to require parents pay restitution for their failure to properly monitor and control
their child's behavior if the child engages in delinquent activity. See Tex. Fam. Code Ann.
§ 54.041(b). Rather than abrogating a common law right not to be held liable for the tortious actions
of others, the statutes impose liability on parents for their failure to properly supervise their children.

 Because no common law cause of action is being abridged, we conclude that sections
54.048 and 54.041(b) do not violate the open courts provision of the Texas Constitution. Therefore,
we overrule appellants' second issue on appeal. 


Sufficiency of the Evidence

 In their first issue, appellants insist that, even if the burden of proof falls on parents,
the trial court erred in requiring them to pay restitution because the evidence supports the conclusion
that D.M.'s parents made reasonable good faith efforts. Therefore, they urge that there was legally
and factually insufficient evidence to support the trial court's "negative finding" that they did not
make reasonable good faith efforts. 

 In support of this argument, appellants point to testimony that (1) they disciplined
D.M. for poor behavior, (2) they asked the school district not to return D.M. to his regular schedule
so quickly after he pulled the fire alarm, (3) they did everything they could to prevent D.M. from
engaging in unlawful conduct, and (4) there was nothing in the record to indicate D.M.'s parents
were responsible for his delinquent behavior.

 Appellants also argue that the trial court erred in requiring them to pay restitution 
because there was legally and factually insufficient evidence that the restitution would promote
D.M.'s rehabilitation as required by subsection 54.041(b) of the family code. (8) 

 In support of this argument, appellants point to testimony given by D.M. that he was
responsible for his actions and should volunteer for community service to pay back the community. 
They further point to testimony from D.M. that he did not intend to cause any damage other than
lighting the couch on fire and that he was trying to repair the damage he had done to his family. 
Finally, they point to previously discussed evidence of their efforts to discipline D.M. and to a
statement given by D.M.'s former cub scout troop leader describing appellants as good and involved
parents.

 Finally, appellants assert that the trial court abused its discretion by requiring them
to pay restitution because it either failed to consider the school district's failure to take reasonable
actions that could have prevented D.M. from setting the fire or incorrectly decided that the district's
actions did not matter. (9)
 Specifically, they argue that the district failed to stop other students from
bullying D.M. even after D.M. informed school officials of the harassment and that the admission,
review, and dismissal committee ignored their concerns that D.M. should not be placed back into
his regular schedule so soon after setting off the fire alarm. Appellants assert that article 42.037(c)
of the code of criminal procedure compelled the trial court to consider the school district's actions
when determining what amount of restitution to award. Article 42.037(c) specifies that the trial
court, in determining the amount of restitution to award, shall consider the "amount of loss
sustained" and "other factors the court deems necessary." Tex. Crim. Proc. Code Ann. art. 42.037(c)
(West Supp. 2005); see Koch v. Koch, 27 S.W.3d 93, 95 (Tex. App.--San Antonio 2000, no pet.)
(trial court abuses its discretion when it declines to exercise power of discretion vested in it by law
and circumstances require power be exercised).

 The decision of whether to award restitution is within the sound discretion of the trial
court and is reviewed under an abuse of discretion standard. In re C.T., 43 S.W.3d 600, 602 (Tex.
App.--Corpus Christi 2001, no pet.); Cartwright v. State, 605 S.W.2d 287, 289 (Tex. Crim. App.
1980). Under an abuse of discretion standard, legal and factual insufficiency are not independent
grounds of error but are factors to consider in the determination of whether the trial court abused its
discretion. Doyle v. Doyle, 955 S.W.2d 478, 479 (Tex. App.--Austin 1997, no pet.); Burns v.
Miller, Hiersche, Martens & Hayward, P.C., 948 S.W.2d 317, 324 (Tex. App.--Dallas 1997, writ
denied); see In re B.B., No. 05-01-01847-CV, 2002 Tex. App. LEXIS 6531, at *2 (Dallas Sept. 4,
2002, pet. denied) (not designated for publication); cf. In re K.T., 107 S.W.3d 65, 72-75 (Tex.
App.--San Antonio 2003, no pet.) (court concluded that legal and factual sufficiency standard of
review is not appropriate to review juvenile disposition order; rather abuse of discretion standard,
divorced from legal and factual sufficiency review, applies). A trial court abuses its discretion when
it acts arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting
evidence. Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex. 1998). 

 Regarding the parents' efforts to prevent D.M. from engaging in delinquent conduct,
the evidence presented to the trial court indicated that the supplies used in setting the fire were
brought from home. The evidence further showed that D.M. had been experimenting with fire for
years and had caused different items to explode in his backyard. At the hearing, D.M. and his
parents placed most of the responsibility for the fire on the school district, rather than on D.M. 
D.M.'s father believed they should only be liable for the damage D.M. intended to cause--the
burning of the couch. The county's assistant director of juvenile services testified that D.M.'s
parents have shielded D.M. from taking responsibility for his misbehavior. Finally, D.M.'s parents
did not provide any evidence of their efforts to discourage D.M. from experimenting with fire. 

 Regarding the rehabilitative effect on D.M., we cannot conclude that, given the
circumstances of this case and our standard of review, the trial court erred when it concluded that 
requiring appellants to pay restitution would have a rehabilitative effect on D.M. We initially note
that the probation order specified that the restitution imposed promoted D.M.'s rehabilitation and
was appropriate given D.M.'s age and his physical, mental, and emotional abilities. See Tex. Fam.
Code Ann. § 54.041(b). (10) D.M. was thirteen years old when he set fire to the school. He was old
enough to realize that starting a fire might cause greater damage than was intended, including
damage caused by smoke and from attempts to extinguish the fire. Further, he had experimented
with fire from a very young age and had previously pulled a fire alarm at the school. Holding D.M.'s
parents liable for $25,000 of the more than $100,000 in damages caused by D.M.'s delinquent action
will have the added effect of teaching D.M. that there are serious financial consequences that can
result from delinquent behavior. This rehabilitative effect would be significantly lessened if the
appellants' liability were limited to the replacement value of the couch, the item D.M. intended to
burn. 

 We disagree with appellants' assertion that the trial court abused its discretion by
requiring the appellants to pay restitution damages in light of the actions of the school district that 
allegedly contributed to the setting of the fire. (11) It is unclear from the record what role the district's
actions played in the trial court's decision. Although article 42.037(c) of the code of criminal
procedure allows a trial court to consider "other factors the court deems appropriate" when
determining restitution awards, there is no requirement mandating the consideration of how the
conduct of another party contributed to the delinquent behavior. See Tex. Code Crim. Proc. Ann.
art. 42.037(c). Further, the statute gives the trial court discretion to determine what factors to
consider in making a restitution award. See id. 

 Regarding the amount of restitution awarded, evidence was introduced at the hearing 
demonstrating that the school district sustained over $100,000 in damage as a result of D.M.'s
actions. An estimate for repairing the damage, which included the cost of removing the water
released by the sprinkler system, was provided. Further, a list of the revenue from the sale of food
that was lost as a result of fire was also provided. Finally, an invoice of the food that was lost due
to the fire was submitted. Therefore, the juvenile court's award of $25,000 for restitution damages
has a factual basis within the actual damages sustained and is, therefore, just. Given the facts
outlined above, we cannot conclude the trial court abused its discretion in ordering appellants to pay
$25,000 in restitution damages. Accordingly, we overrule appellants' first issue on appeal.


CONCLUSION

 Having overruled all of appellants' issues on appeal, we affirm the order of the trial
court.



 __________________________________________

 David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: March 30, 2006
1. In Texas, special education students receive individualized instruction that comports with
an education plan developed by a committee of school administrators, teachers, and parents called
the admission, review, and dismissal committee. See 20 U.S.C.A. §§ 1401(14) (describing
individualized education program), 1414(d) (West Supp. 2005) (describing requirements of
individualized education program); 19 Tex. Admin. Code § 89.1050 (2005) (requiring school
districts to set up admission, review, and dismissal committee). 
2. The director of safety and risk management for Round Rock Independent School District,
Michelle Faust, testified that the total amount of damage caused by the fire was over $100,000. 
3. Article 42.037(k) reads as follows:


The court shall resolve any dispute relating to the proper amount or type of
restitution. The standard of proof is a preponderance of the evidence. The burden
of demonstrating the amount of the loss sustained by a victim as a result of the
offense is on the prosecuting attorney. The burden of demonstrating the financial
resources of the defendant and the financial needs of the defendant and the
defendant's dependents is on the defendant. The burden of demonstrating other
matters as the court deems appropriate is on the party designated by the court as
justice requires.


Tex. Code Crim. Proc. Ann. art. 42.037(k) (West Supp. 2005).
4. In their briefs, appellants refer to both the burden of persuasion and the burden of proof. 
The burden of proof consists of the combination of two components--the burden of production and
the burden of persuasion. Cf. Alford v. State, 866 S.W.2d 619, 621 n.4 (Tex. Crim. App. 1993). The
burden of persuasion refers to the burden of persuading the trier of fact that the alleged fact is true. 
Cf. id. Because the distinction is not relevant to the outcome of this appeal, we will refer only to the
burden of proof.

5. Appellants also cite to the following cases: Weiner v. Wasson, 900 S.W.2d 316 (Tex. 1995)
(statute provided two-year statute of limitations for medical malpractice claims; court concluded
statute violated open courts provision for minors because minors precluded from suing parents under
doctrine of parent-child immunity for negligence if parents did not file suit); Nelson v. Krusen, 678
S.W.2d 918, 921 (Tex. 1984) (court concluded that statute, which had two-year statute of limitations
for filing wrongful birth suit against doctor was unconstitutional because nature of injury made it
impossible for parents to discover injury within two years); McCrary v. City of Odessa, 482 S.W.2d
151 (Tex. 1972) (city charter required injured person filing suit against city give notice to city
council within 60 days of injury; court concluded minor making claim was excused from
requirement until reached majority).
6. See Hanks v. Port Arthur, 48 S.W.2d 944 (Tex. 1932) (plaintiff was injured while walking
on sidewalk and sued city, but city charter specified that city not liable for injuries unless city
commissioner personally inspected defect at least 24 hours prior to injury; court concluded section
unconstitutional because it required people ignorant of the defect to give notice to city to be able to
recover for injury sustained, which imposed an unreasonable condition precedent to recovery).
7. Further, the doctrine of parental immunity does not apply under the circumstances of this
case. The doctrine, in its most basic form, prevents children from suing their parents to recover for
damages sustained as a result of their tortious actions. Jilani v. Jilani, 767 S.W.2d 671, 671 (Tex.
1988). The doctrine prohibits suits by children against their parents regarding alleged acts of
ordinary negligence that involve a reasonable exercise of parental authority or the exercise of
ordinary parental discretion. Weiner v. Wasson, 900 S.W.2d at 316 n.4; see also Jilani, 767 S.W.2d
at 673 (concluding no parental immunity for negligent operation of motor vehicle because it is not
essential parental action); Felderhoff v. Felderhoff, 473 S.W.2d 928, 933 (Tex. 1971) (minor son
allowed to sue father's partnership because son worked for partnership and injured due to negligence
of father in course and furtherance of business rather than discharge of parental duties). The doctrine
does not address the situation of parents seeking contribution from their child for restitution they
were required to pay as a result of the child's delinquent behavior.
8. Subsection 54.041(b) reads, in relevant part, as follows:


[T]he juvenile court . . . may order the child or parent to make full or partial
restitution to the victim of the offense. The program of restitution must promote
the rehabilitation of the child, be appropriate to the age and physical, emotional,
and mental abilities of the child, and not conflict with the child's schooling.


Tex. Fam. Code Ann. § 54.041(b) (West 2002 & Supp. 2005).
9. D.M.'s parents point to the following statement from the trial judge to D.M. as proof that
the court did not consider the district's actions in making the restitution award:


But you know what you did was absolutely wrong. And I don't care who told
you to do it. If they absolutely told you to do it, you know you didn't have to do
it. 


10. We also note that the court also ordered D.M. to perform community service and to attend
peer-pressure reversal classes, which also address rehabilitation. 
11. Although appellants contend that due process and equity require that the concept of
"unclean hands" or contributory negligence be applied in a juvenile proceeding, they have not cited
to any authority for this proposition, nor have we found any.